UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DIGITALIRA.COM, LLC and ALTERNATIVE IRA SERVICES, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> THE KINGDOM TRUST COMPANY, <br><br> Defendant. | 4:19-CV-04147-KES <br><br><br> ORDER GRANTING PRELIMINARY INJUNCTION |

Plaintiffs, DigitalIRA.com, LLC (Digital IRA) and Alternative IRA Services, LLC (Bitcoin IRA), move for a temporary restraining order and preliminary injunction against defendant, The Kingdom Trust Company. Docket 3. Kingdom Trust opposes this motion. Docket 37. For the following reasons, the preliminary injunction is granted.

**BACKGROUND**

In recent years, some retirement investors have begun holding their retirement assets in cryptocurrency. *See* Docket 4 at 4-5. Such investors store these assets through a trust custodian, who, for a fee, employs secure methods to keep the assets safe from nefarious third-parties. *Id.* at 4. Many investors also use an account service provider who facilitates the purchase, sale, and delivery of cryptocurrency funds. *See Id.* at 4-5. Such account service providers recommend a variety of third-party services to their customers. *Id.* These

services include trust custodianship and online trading platforms, which allow customers to self-direct trading through an online portal. *Id.*

Kingdom Trust is a trust custodian. *Id.* at 5. It charges customers a monthly fee in exchange for holding their assets in secured storage. *Id.* It has been approved by the South Dakota Division of Banking as a public South Dakota Trust Company. *Id.* Bitcoin IRA is a technology platform that allows account holders who keep assets in cryptocurrency to make trades and monitor their account balances online. FTR: Evidentiary Hearing on Motion for Temporary Restraining Order and Preliminary Injunction at 9:18 a.m., DigitalIRA.com LLC et al. v. The Kingdom Trust Company, No. 19-CV-4137-KES. It uses several fictitious business names in conducting its services: Bitcoin IRA, Digital IRA, and Digital Gold. *Id.*

DigitalIRA.com is a separate, new entity. *Id.* at 9:19 a.m. It was created to be the third-party administrator for BitGo Trust, a trust custodian unrelated to Kingdom Trust. *Id.* DigitalIRA.com and Bitcoin IRA, while separate entities, are related. *Id.* Chris Kline serves as Chief Operating Officer of both companies, and the former refers customers to use the latter as an online trading platform. *Id.*; Docket 4 at 5. DigitalIRA.com has no alleged relationship with Kingdom Trust.

On September 5, 2018, Bitcoin IRA[1] and Kingdom Trust entered into a referral agreement. Docket 1-1 at 2. The agreement stated that Bitcoin IRA

---

[1] The referral agreement entered into by Kingdom Trust and Alternative Account Services, LLC references the fictitious business name Digital IRA.

would refer its clients to use Kingdom Trust as a trust custodian. *Id.* ¶ 1. In exchange, Kingdom Trust agreed to pay Bitcoin IRA a referral fee for account holders who became Kingdom Trust customers. *Id.* ¶¶ 2-3. The agreement was for a term of one year from its execution and it renewed annually automatically, unless terminated by one of the parties. *Id.* ¶¶ 5, 7. It allowed for termination by either party, provided that the terminating party gave 180 days of written notice to the other party. *Id.* ¶ 6. Kingdom Trust agreed to notify Bitcoin IRA of any changes made to accounts that used Bitcoin IRA as a trading platform. *Id.* ¶ 13.

Kingdom Trust customers who wished to use Bitcoin IRA as their online trading platform named Bitcoin IRA as their account designated representative (ADR). Docket 4 at 2. An ADR is granted access to customer accounts for use in advising and facilitating trades. Docket 1-3 ¶ 10.3; FTR: Evidentiary Hearing at 12:54-12:55 p.m. This designation gave Bitcoin IRA permission to access account data in Kingdom Trust. Docket 4 at 2. Kingdom Trust facilitated this access via application programming interfaces (APIs). FTR: Evidentiary Hearing at 9:23 a.m. The APIs map data, like customer name and address, from Kingdom Trust accounts into Bitcoin IRA, and vice versa. *Id.* Bitcoin IRA also received a daily "data feed" from Kingdom Trust that contained updated information about customers' holdings. *Id.* at 9:33 a.m. The data feed also

---

Docket 1-1. Plaintiffs refer to the same entity primarily as Bitcoin IRA in their pleadings. *See, e.g.,* Docket 1, Docket 4. To avoid confusion with DigitalIRA.com, the court here refers to Alternative Account Services, LLC as Bitcoin IRA.

3

included data about trades and transactions so that Bitcoin IRA's account pages could reflect the same information as Kingdom Trust's database. *Id.* at 12:56-12:57 p.m. Bitcoin IRA used this information to ensure its platform reflected accurate information about customers' holdings. *Id.* at 9:33 am.

Over 1,000 of Kingdom Trust's customers used Bitcoin IRA as their ADR and used the Bitcoin IRA platform to effectuate online trades. *See Id.* at 11:15-11:16 a.m. The Kingdom Trust-Bitcoin IRA relationship began to sour after Bitcoin IRA became the third-party administrator for BitGo Trust. *Id.* at 10:03 a.m. According to Kline, Bitcoin IRA partnered with BitGo Trust to give Bitcoin IRA customers "optionality." *Id.* Bitcoin IRA users could, but were not required to, choose to use BitGo Trust instead of Kingdom Trust as their trust custodian. *Id.*

On July 5, 2019, Bitcoin IRA sent a letter to its account holders. Defendant's Exhibit 21. The letter stated that by "upgrading" accounts for free, customers could receive new features. *Id.* at 1. But the "upgrade" that Bitcoin IRA touted as an improvement to its existing features was a switch from Kingdom Trust to BitGo Trust. FTR: Evidentiary Hearing at 10:53 a.m. The letter included a link to a form that directed a transfer of customers' assets from Kingdom Trust to BitGo Trust. *Id.* at 10:53-10:54 a.m; Defendant's Exhibit 21 at 1. An "upgrade my account" link, which also took customers to the form, was added to the Bitcoin IRA customer login portal. FTR: Evidentiary Hearing at 12:58 p.m.

Following the letter and additional solicitations from Bitcoin IRA, 1,177 customers submitted requests to transfer their assets from Kingdom Trust to BitGo Trust. *Id.* at 11:15-11:16 a.m. Before moving any assets to BitGo Trust, Kingdom Trust validated each customer's intent to transfer. *Id.* at 11:58 a.m., 1:00-1:01 p.m. Kingdom Trust asserts that many customers who filled out the "upgrade" form did not know they were requesting to transfer assets to BitGo Trust. *Id.* at 1:01 p.m. Kingdom Trust felt the transfer requests exposed its clients to "heightened risk." *Id.* at 1:02 p.m. It alleges that for customers who validated their desire to transfer and submitted the proper paperwork, transfers were effectuated within a few weeks. *Id.* at 1:14-1:15 p.m.

On August 23, 2019, Kingdom Trust removed Bitcoin IRA's API access and stopped sending daily updated account information, as was the previous custom. *Id.* at 9:34-9:35 a.m. Thus, Bitcoin IRA's online trading platform no longer reflected accurate, up-to-date information about assets held in Kingdom Trust's customers' accounts. *Id.* Kingdom Trust did not provide notice to Bitcoin IRA prior to removing access to account data. *Id.* at 9:58 a.m.

Bitcoin IRA created a "mirror" database that reflects account information as it was on August 23, 2019, so that customers' accounts still reflect some estimate of actual assets. *Id.* at 9:34 a.m. But without updated data, customers risk trading on outdated information that reflects inaccurate balances and holdings. *Id.* at 9:35 a.m. This might cause further problems with liquidity providers once trades are executed. *Id.* Kingdom Trust has not reinstated Bitcoin IRA's access to account data. *Id.* at 11:39-11:40 a.m.

Kingdom Trust asserts that its customers would be harmed if Bitcoin IRA is able to access account data. *Id.* at 1:04 p.m. It claims Bitcoin IRA's misleading behavior in urging clients to "upgrade" shows that Bitcoin IRA shared confidential information about Kingdom Trust accounts with BitGo Trust and DigitalIRA.com. *Id.* at 1:04 p.m., 1:43 p.m. Kingdom Trust alleges that by withholding access to client account information, it is acting in its clients' best interest and is performing due diligence to ensure their data will not be misused. *Id.* at 1:03-1:04 p.m. Around 400 customers who initially requested a transfer have not been transferred to BitGo Trust. *Id.* at 11:57 a.m. Kingdom Trust asserts that it is still "walking through the process" of transferring these customers. *Id.*

To date, customers are still not receiving up-to-date data about their Kingdom Trust accounts through the Bitcoin IRA platform. *Id.* at 11:39-11:40 a.m. Kingdom Trust does not send account data to Bitcoin IRA for any accounts. *Id.* at 11:40 a.m. Because of volatility in cryptocurrency markets, trading on reliable data is crucial. *Id.* at 11:39 a.m. Kingdom Trust notes that customers can still trade on updated data by first calling Kingdom Trust or logging onto their website to check their account data, and then logging on to Bitcoin IRA to make the trade. *Id.* at 12:57-12:58 p.m. Around 80 trades have been made in this manner since August 23, 2019, when Bitcoin IRA's access to Kingdom Trust data was shut off. *Id.* at 12:58 p.m.

Bitcoin IRA alleges that "down time" and continuity statistics are crucially important to its reputation as a technology platform. *Id.* at 10:31-

6

10:32 a.m. It states that because it is not receiving data from Kingdom Trust, its reputation suffers among its existing and potential customers. *Id.* at 10:31 a.m. Account holders who are unable to access their data via Bitcoin IRA, despite having designated Bitcoin IRA as their ADR, may lose confidence and trust in the service. *Id.* at 10:32 a.m. And Bitcoin IRA alleges that it could suffer permanent reputational damage if customers are unable to access their data to make trades on its platform for an extended period. *Id.* at 10:33-10:34 a.m.

## STANDING

To bring a case in federal court, a litigant must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is an "essential and unchanging" requirement for federal jurisdiction. *Id.* To show standing to sue, the party invoking federal jurisdiction bears the burden of establishing three elements. *Id.* First, the party must show injury in fact that is both "concrete and particularized" and "actual or imminent." *Id.* Second, the party must show "a causal connection between the injury and the conduct complained of . . . ." *Id.* Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Parties must have a "personal stake" in the subject matter of the adjudication in order to bring a suit. *See Sprint Commc'ns Co., LP v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008) (noting a general "personal stake" requirement for standing). "A party 'generally must assert his own legal

7

rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). While courts recognize exceptions to this doctrine, generally those exceptions exist when an individual may not be able to enforce his or her own rights. *Id.* at 129-30.

Here, Bitcoin IRA alleges that it suffers harm because Kingdom Trust continues to cut off its access to real-time data from its customers' Kingdom Trust accounts. FTR: Evidentiary Hearing at 10:32 a.m. Such harm, Bitcoin IRA alleges, takes the form of lost consumer confidence and damage to its reputation for not delivering on the services it promises. *Id.* Kingdom Trust argues that Bitcoin IRA is attempting to bring claims that are appropriately brought by Bitcoin IRA's customers. Docket 37 at 3. It argues that Bitcoin IRA seeks to enforce the custodial agreement between Kingdom Trust and its clients, and that Bitcoin IRA does not have standing to bring that claim. *Id.* at 3-4

Harm to its own reputation gives rise to a cause of action in which Bitcoin IRA has a "personal stake." Reputational harm could lead directly to lost business and revenue for Bitcoin IRA. This harm also meets the more specific Article III requirements. First, it is "concrete and particular" and "imminent." Lost business because of a poor reputation can cause tangible financial damage to Bitcoin IRA. And because account holders are already deprived of access to their data and continue to be indefinitely, such harm is imminent. Second, the reputational damage alleged is caused directly by

Kingdom Trust's refusal to share account data. Finally, if Kingdom Trust were ordered to restore access to data, Bitcoin IRA's platform would operate as designed for Kingdom Trust-Bitcoin IRA customers. This would mitigate or eliminate the alleged reputational harm. Thus, Bitcoin IRA has standing to bring claims based on its own harm suffered because of Kingdom Trust's failure to share account data.

But harm suffered by Bitcoin IRA's clients in the form of lost investment opportunities or inconvenience is not harm in which Bitcoin IRA has a "personal stake." Bitcoin IRA has not shown that its customers are unable to bring their own litigation to redress harms caused to them by the inability to make trades using updated data.[2] Thus, Bitcoin IRA does not have standing to bring claims based solely on losses sustained by its customers and the court will not address any such claims.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). To determine whether preliminary relief such as a preliminary injunction or a temporary restraining order is appropriate, the court considers the following factors: " '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm

---

[2] Bitcoin IRA customers filed a separate action against Kingdom Trust. *Whitehurst et al. v. The Kingdom Trust Company*, No. 19-CV-04158-KES (D.S.D. Sept. 11, 2019).

9

and the injury that granting the injunction will inflict on [the nonmovant]; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.' " *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (alterations in original) (quoting *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)). The *Dataphase* test for preliminary injunctive relief is a flexible analysis. *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999). Thus, when weighing these factors, "no single factor is in itself dispositive[.]" *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987). "[A]ll of the factors must be considered to determine" whether the balance weighs toward granting the injunction. *Id.*

## DISCUSSION

**I.     The Probability of Success on the Merits**

The first *Dataphase* factor focuses on the probability that the movant will succeed on the merits. "Success on the merits has been referred to as the most important of the four factors." *Roudachevski*, 648 F.3d at 706. Probability of success on the merits means that the moving party must show that it has "a 'fair chance of prevailing' " on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). A "fair chance of prevailing" does not necessarily mean a greater than fifty percent likelihood of prevailing on the merits of the claim. *Planned Parenthood*, 530 F.3d at 731-32. Thus, "[a]t the

10

early stage of a preliminary injunction motion, the speculative nature of this particular inquiry militates against any wooden or mathematical application of the test." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

A claim of tortious interference with business expectancy requires:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional and unjustified act of interference on the part of the interferer; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship or expectancy was disrupted.

*Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D. 1992).

Bitcoin IRA shows a "fair chance of prevailing" on its tortious interference with business expectancy claim. First, it showed that a valid business relationship existed between Bitcoin IRA and the customers who designated Bitcoin IRA as their ADR. The ADR designation gives Bitcoin IRA permission to access customer account data from Kingdom Trust so that customers may use updated data for trading in Bitcoin IRA. Docket 1-3 ¶ 10.3; FTR: Evidentiary Hearing at 12:54-12:55 p.m.; Docket 4 at 2. Until August 23, 2019, Kingdom Trust provided Bitcoin IRA access to that information. FTR: Evidentiary Hearing at 9:34-9:35 a.m. Bitcoin IRA had an expectation that Kingdom Trust would continue providing it access to account data of Kingdom Trust's customers who designated Bitcoin IRA as their ADR. Kingdom Trust did not notify Bitcoin IRA

11

before cutting off access to account data. *Id.* at 9:58 a.m. Thus, Bitcoin IRA had a valid business relationship with those customers and a valid expectancy that it would continue being able to service them using updated account data.

Second, Bitcoin IRA showed that Kingdom Trust knew about this business relationship. Kingdom Trust would not have provided account information to Bitcoin IRA in the first place had it not known that Bitcoin IRA was designated as the ADR for Kingdom Trust clients. Because Kingdom Trust provided this information in the past, Bitcoin IRA can show that Kingdom Trust was aware of the ADR designation.

Third, Bitcoin IRA has a fair chance of prevailing on a showing that Kingdom Trust's failure to share data was intentional and unjustified. Kingdom Trust acknowledges that it cut off access to customer data and that it continues to not share data with Bitcoin IRA because it believes clients would be harmed if Bitcoin IRA had access to data. *Id.* at 1:04 p.m. This is evidence of Kingdom Trust's intent to cut off data access. Kingdom Trust acknowledges that it has transferred to BitGo Trust many of the customers who requested transfers. *Id.* at 11:57 a.m. At the time of the evidentiary hearing, only around 400 of the 1177 customers who requested transfers had not been transferred to BitGo Trust. *Id.* at 11:56 a.m. Kingdom Trust states that it performed due diligence prior to transferring those customers' assets. *Id.* at 11:57 a.m. Thus, while Kingdom Trust asserts that it is acting in its clients' best interest by refusing to reinstate data access, Kingdom Trust's past actions of transferring

assets to BitGo Trust is evidence that it deems BitGo Trust to be an acceptable recipient of the assets. This is circumstantial evidence showing that Kingdom Trust's continued delay or failure to transfer accounts to BitGo Trust may not be justified by its claim that it is acting to protect its customers from harm.

Fourth, Bitcoin IRA has shown that Kingdom Trust's refusal to provide account data is causing it harm. Bitcoin IRA alleges that "down time" and continuity are crucially important for its reputation as a technology platform. *Id.* at 10:31-10:32 a.m. Because it is not receiving data from Kingdom Trust, its reputation is suffering among its existing and potential customers. *Id.* This harm is caused by Bitcoin IRA's inability to give updated account information to its customers who use Kingdom Trust as their trust custodian. Kingdom Trust has not shown that Bitcoin IRA has any other means of obtaining this data. Thus, Bitcoin IRA has shown a fair chance of proving that the alleged interference causes it harm.

Fifth, Bitcoin IRA alleged that its reputation has suffered, and will continue to suffer, if its clients cannot access up-to-date data. *Id.* at 10:31-10:32 a.m. It stands to lose revenue if customers move to other technology platforms because they cannot use the full functionality of Bitcoin IRA. Thus, Bitcoin IRA suffers damage because of Kingdom Trust's interference with Bitcoin IRA's ability to serve its customers for whom it is an ADR.

Bitcoin IRA showed a fair chance of prevailing on all elements of its tortious interference with business expectancy claim. Because it showed a fair

chance of prevailing on this claim, the court will not separately evaluate each of its remaining claims.

## II. Threat of Irreparable Harm

The second *Dataphase* factor is that the movant must show that it is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A movant's failure to demonstrate irreparable harm is enough to deny a motion for preliminary injunction. *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (citing *Watkins Inc.*, 346 F.3d at 844). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quotation omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

"Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). *See also Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 789-90 (8th Cir. 2010) ("We have previously held that a district court did not err when finding that a loss of goodwill among customers was sufficient to establish a threat of irreparable harm."); *General Mills, Inc. v. Kellogg Co.*, 824

F.2d 622, 625 (8th Cir. 1987) (finding irreparable harm where "intangible assets such as reputation and goodwill" are at risk).

Here, Bitcoin IRA states that Kingdom Trust causes it irreparable harm by refusing to share data about accounts for which Bitcoin IRA is the ADR. Docket 4 at 18-22. Bitcoin IRA's clients do not have up-to-date data in their Bitcoin IRA accounts when they log in to make trades. These customers, who rely on Bitcoin IRA as their ADR, might lose confidence in the platform if they are unable to access this necessary information. And a prolonged lack of access may lead to permanent damage to Bitcoin IRA's reputation as a cryptocurrency trading platform. Thus, Bitcoin IRA has shown irreparable harm should Kingdom Trust continue cutting off its access to client data.

### III.     Balance of the Hardships

The third *Dataphase* factor for obtaining a preliminary injunction requires plaintiffs to establish that their irreparable harm is greater than the hardship that a preliminary injunction would cause defendants. *Sturgis Area Chamber of Commerce v. Sturgis Rally & Races, Inc.*, 99 F. Supp. 2d 1090, 1101 (D.S.D. 2000).

Here, Kingdom Trust initially alleged that no harm would befall it if Kingdom Trust reinstated Bitcoin IRA's access to data, but rather that the harm would be to its customers. FTR: Evidentiary Hearing at 1:03-1:04 p.m. It clarified that it could suffer harm by having to "answer to a regulatory authority" if it shared data with a rogue ADR. *Id.* at 1:09 p.m. But it has not alleged that any regulatory authority has flagged Bitcoin IRA or instructed

15

Kingdom Trust not to share data with Bitcoin IRA. Thus, it has not shown that it will suffer harm if required to reinstate data sharing.

Kingdom Trust also stated that customers are not harmed by the lack of updated account data in Bitcoin IRA's platform because customers can access up-to-date data via the Kingdom Trust website. *Id.* at 1:09-1:10 p.m. But because Kingdom Trust cannot pinpoint what harm those customers would suffer if data sharing was reinstated, it has not shown that the harm would be greater than if data continues to be cut off. Thus, the balance of hardships, both as to Kingdom Trust and as to its customers, favors reinstating the status quo and requiring data sharing by Kingdom Trust.

## IV. Public Interest

The public interest is the final *Dataphase* factor the court balances to determine whether a preliminary injunction should be issued. Here, the public interest weighs heavily in favor of honoring Kingdom Trust's customers' ADR designation by granting account information access to Bitcoin IRA. Kingdom Trust unilaterally terminated customers' access to their own account data on Bitcoin IRA's website, and it has not shown that the interference is justified. As such, the public interest is better served by Kingdom Trust's honoring the ADR designation until its customers choose to terminate it and sharing information about these accounts with Bitcoin IRA.

Furthermore, the public interest favors individuals' ability to make informed choices about their retirement investment portfolios. Kingdom Trust-

Bitcoin IRA customers have not had updated data with which to make trades on their Bitcoin IRA account in over two months. And while they can access the information piecemeal through Kingdom Trust's site and subsequently trade on the Bitcoin IRA platform, their ability to manage their own retirement investments is hindered by this lack of data sharing. The public interest weighs heavily in favor of account holders' ability to make informed retirement investment decisions.

**CONCLUSION**

Bitcoin IRA showed that it has a fair chance of prevailing on the merits, that it is likely to suffer permanent harm if the requested relief is not granted, and that the balance of hardships and public interest favor issuing a preliminary injunction. Thus, it is

ORDERED that plaintiffs' motion for temporary restraining order and preliminary injunction (Docket 3) is granted as follows:

1. Kingdom Trust is ordered to fully restore to the condition and functionality existing prior to August 21, 2019, Alternative IRA Services LLC's (Bitcoin IRA) access to account holder data of the accounts to which Bitcoin IRA is the account designated representative by the account holder, and account holder access to Bitcoin IRA's online platform, thereby allowing the account holders to once again self-direct their retirement accounts online 24 hours a day, 7 days a week.

2. Kingdom Trust is not required to provide account data to plaintiff DigitalIRA.com, LLC.

3. Bitcoin IRA is ordered not to release any of Kingdom Trust customers' account information to DigitalIRA.com, LLC.

4. Plaintiffs are ordered to post a surety bond of $50,000.00.

Dated November 12, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE